Robert P. Schuster
Wyoming Bar No. 4-1137
Bradley L. Booke
Wyoming Bar No. 5-1676
ROBERT P. SCHUSTER, P.C.
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
bob@bobschuster.com
brad@bobschuster.com

Dallas J. Laird
Wyoming Bar No. 5-1194
536 South Center Street
Casper, Wyoming 82601
Telephone: 1.307.265.6352
dallaslaird@mac.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| **KYLIE K. HENDERSON,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil No.** 2 0 -CV-113 - J |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

---

## COMPLAINT

---

For her claims for relief against the defendant, Kylie K. Henderson---by and through her counsel---states and alleges as follows:

### I.     PARTIES

1.  Kylie K. Henderson ("Ms. Henderson") is a resident of Natrona County, Wyoming, and has been at all times relevant hereto.

2.  The United States of America is liable for the acts and omissions of Balpreet Brar Singh, M.D. ("Dr. Singh"), a physician employed by Community Health Centers of Central Wyoming, Casper, Wyoming ("Community Health"). At all times relevant hereto, (a) Dr. Singh was an employee of Community Health, and (b) Community Health was a Federally Qualified Health

Center. Accordingly, this case is brought under the authority of the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2410, 2671-80 et seq.).

3. Balpreet Brar Singh, M.D., was a physician licensed to practice medicine in the State of Wyoming at the time of the events that are the subject of this Complaint---and at such time he was a resident of the Natrona County, Wyoming. His license to practice medicine in Wyoming has since expired. He is currently licensed to practice medicine in the State of Arizona and is a resident of Maricopa County, Arizona. He attended medical school at Ross University School of Medicine located in Roseau, Commonwealth of Dominica, a small island country in the Caribbean Sea (not to be confused with the Dominican Republic). Ross University has been accredited by the Caribbean Accreditation Authority for Education in Medicine and other Health Care Professionals. Dr. Singh completed a residency at Maimonides Medical Center in Brooklyn, New York. He holds himself out as an obstetrician/gynecologist.

## II.    JURISDICTION

4. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1346(b) which provides exclusive jurisdiction in the United States District Courts for civil actions seeking money damages for acts and omissions of government employees. Community Health and Dr. Singh are deemed to be employees of the United States by virtue of two separate enactments. The Public Health Service Act of 1944 extended the coverage of the Federal Tort Claims Act ("FTCA") to employees of the Public Health Service. 42 U.S.C. § 233 (previously denominated as 42 U.S.C. § 224). The Federally Supported Health Centers Assistance Act of 1992 created Federally Qualified Health Centers (42 U.S.C. § 254) and further provided that employees of qualifying Centers are "deemed" to be employees of the Public Health Service, thereby bringing them within the protections of the FTCA. 42 U.S.C. § 233(g)-(o) [see, in particular, § 233(o)]. A

Center qualifies as being part of the Public Health Service if two criteria are met: (a) the Center receives federal funding under 28 U.S.C. § 254b, and (b) it passes an annual administrative examination by the Department of Health and Human Services resulting in the issuance of a "deeming notice"---"deeming" the Center and its medical employees and medical contractors to be employees of the Public Health Service. 42 U.S.C. § 233(g)-(o).

5.  Upon information and belief, Ms. Henderson alleges that---at all times relevant hereto--- (a) Dr. Singh was an employee or medical contractor of Community Health, (b) Community Health received federal funding under 28 U.S.C. § 254b, (c) Community Health received and was operating under an FTCA Deeming Notice issued by the Department of Health and Human Services, (d) Dr. Singh provided medical services to Ms. Henderson while acting within the scope of his employment, and (e) the acts and omissions of Dr. Singh were committed under circumstances where the United States, if a private person, would be liable to Ms. Henderson in accordance with the law of the place where the acts and omissions occurred.

6.  In compliance with the provisions of 28 U.S.C § 2675(a), Ms. Henderson timely submitted her Claim for Damage, Injury, or Death dated October 28, 2019 (filed October 31, 2019) to the Health Resources & Services Administration and the U.S. Department of Health & Human Services.  By letter dated March 23, 2020, counsel for Ms. Henderson were notified that the Administrative Tort Claim of Kylie K. Henderson (Claim No. 2020-0069) was denied and that Ms. Henderson was "entitled to...file against the United States in the appropriate federal district court within six (6) months from the date of mailing of this determination [28 U.S.C. § 2401(b)]."

7.  Although a claim against Dr. Singh is not within the statutory requirements of the Wyoming Medical Review Panel Act (§ 9-2-1519, W.S. 1977 as amended), Ms. Henderson---out of caution---filed her Claimant's Wyoming Medical Review Panel Document on October 31, 2019

and named Dr. Singh as one of the healthcare providers against whom the Claim was made. Dr. Singh was served by the Director of the Medical Review Panel and did not respond. The Director issued his Order of Dismissal on January 16, 2020, noting that Dr. Singh "has failed to file an answer, and that an order should be issued authorizing the claimant to immediately pursue the claim in a court of competent jurisdiction pursuant to W.S. § 9-2-1519(e)."

8. Although not jurisdictional for an FTCA claim, the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs in conformity with the provisions of 28 U.S.C. §1332(a).

### III. VENUE

9. Venue of this action lies in this judicial district under 28 U.S.C. § 1402(b). The case is brought under the Federal Tort Claims Act, Ms. Henderson is a resident of this judicial district, and acts or omissions that give rise to this case occurred within this judicial district.

### III.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. Ms. Henderson lives in Natrona County, Wyoming. She became pregnant with her first child in 2017 and was a patient with the University of Wyoming Family Medicine Residency Program ("the Program") in Casper. The residents receive training to be family medicine specialists, including training in obstetrics and gynecology although none of the faculty members ("the Residency Program Physicians") are board certified obstetricians or gynecologists.

11. The labor and delivery and birth of her daughter, E.J.G., occurred at Wyoming Medical Center ("WMC"). Ms. Henderson was admitted to WMC on November 2, 2017 at approximately 8:50 p.m. Throughout the relevant period, various residents and physicians employed by the Residency Program---as well as nursing and other personnel from WMC---provided medical treatment to her. However, the only healthcare provider who held himself or herself out to be a

specialist in obstetrics or gynecology was Dr. Singh. In consequence of his greater training and experience, Dr. Singh had greater responsibility and duties to Ms. Henderson---although all had their own responsibilities.

12. Throughout the relevant time (November 2, 2017 to November 6, 2017) while Ms. Henderson was a patient at Wyoming Medical Center, Dr. Singh and Ms. Henderson had a physician-patient relationship. In the course of that physician-patient relationship, Dr. Singh's negligence was two-fold. His own care and treatment were negligent and below the standard of care. In addition, he negligently failed to intervene to protect Ms. Henderson in spite of the fact that the care and treatment being provided by the Residency Program Residents and Physicians--- as well as by WMC personnel---was negligent and was endangering Ms. Henderson, circumstances of which Dr. Singh should have been aware and circumstances that necessitated that he take affirmative action to intervene to protect the safety and health of Ms. Henderson---all of which he negligently failed to do. The care and treatment provided to Ms. Henderson between November 2, 2017 and November 6, 2017---discussed hereafter---was known to Dr. Singh and was available to him from the medical records and his own personal interactions with Ms. Henderson, the Residency Program Residents and Physicians, and WMC personnel.

13. For the November 2 admission, Dr. Brian Veauthier, M.D., was the attending physician and Dr. Michael V. Miller, D.O., was the attending resident physician. Ms. Henderson was a high-risk obstetric patient for reasons that included a history of neurofibromatosis and maternal hypertension. The history and physical stated that---upon admission on November 2, 2017---her contractions were occurring every 3 minutes, that her cervix was dilated to 1.5 cm and 50% effaced, and that the baby was at minus 3 station. Her cervix was evaluated as being unfavorable.

14. Ms. Henderson was having active contractions. Electronic fetal heart monitoring commenced at 9:03 p.m. and continued until 1:12 a.m. on November 3, 2017. The contractions were continuing but the progress of labor deteriorated. At 11:00 p.m., she was dilated to 1.5 cm, 30% effaced, and the baby was at minus 3 station. Her blood pressure was in the severe range. It was determined she should be induced but---rather than commencing that process at that time while she was in the hospital---she was discharged to home on November 3, 207 at 1:08 a.m. with active contractions and directed to return to the hospital in the afternoon. Given her condition at the time and the frequency of her contractions, she should not have been discharged. It was negligent to order and to permit discharge.

15. Ms. Henderson was re-admitted to Wyoming Medical Center at 12:15 p.m. on November 3, 2017. Dr. Zachory Deiss, M.D., was the attending physician and Katrina F. Quick, M.D., was the attending resident physician. During the period of her hospitalization until a C-Section was ultimately performed, additional resident physicians who were a part of the negligent misconduct during that period included Michael V. Miller, D.O.; Taylor N. Pedersen, D.O.; Adam R. Hoopes, D.O.; Benjamin Willford, D.O.; David Busick, M.D.; Nicholas Loughlin, D.O.; Brian Tyler Melville, D.O.; and Daniel J. Burris, M.D.

16. The admitting history and physical was performed by Dr. Quick and it included the following observations and conclusions:

    a.      "Patient presents for a scheduled induction for gestational HTN [hypertension] after she was seen on L&D last night with BPs in the severe range."

    b.      "I discussed case with Dr. McDuffie from Denver's MFM, who recommended induction for gestational HTN [hypertension] in the severe range without preeclampsia."

c. "Patient does have a Hx for NF1 [Neurofibromatosis Type 1] and has a spinal MRI from 11/20/2012 where she was found to have peripheral nerve sheath tumor on L1-L3."

d. The cervix examination had further deteriorated from the night before:  dilated to 0.5 cm; 30% effaced; minus 3 station.

17. In the history and physical note, Dr. Quick stated that she discussed the case with Dr. Singh.

18. Ms. Henderson was admitted for the scheduled induction.  She was having contractions. Electronic fetal heart monitoring (external) recommenced at 12:40 p.m. on November 3, 2017 and induction started at 2:17 p.m.  It was not until 8:17 p.m. on November 5 that an IUPC [intrauterine pressure catheter] and fetal scalp electrode were placed---which followed the artificial rupture of membranes at 8:13 p.m. revealing particulate meconium.

19. As the records from her previous admission indicated, Dr. Singh had knowledge that Ms. Henderson was having contractions from at least 8:50 p.m. on November 2, 2017 and that, from the outset, it was known that progress of delivery was minimal and that the minimal progress had deteriorated.  Further, Dr. Singh knew that Ms. Henderson was a high-risk patient, suffered from Neurofibromatosis Type 1, and had a lumbar nerve sheath tumor.  Those facts enhanced the duty and responsibility of Dr. Singh to provide diligent supervision and monitoring to assure that safe and appropriate medical care was provided to Ms. Henderson, who was being treated by residents who were not board-certified obstetricians with faculty members who were not board-certified obstetricians.

20. Ms. Henderson's induction commenced.  The first dose of Misoprostol (Cytotec) was given at 2:17 p.m., November 3, 2017.    An hour earlier---at 1:14 p.m.---Ms. Henderson's vaginal examination showed she was dilated to 0.5 cm; 30% effaced; minus 3 station.  Approximately 24 hours later---at 1:50 p.m. on November 4---there was only minimal progress: dilated to 2 cm; 50%

effaced; minus 1 station. On the morning of November 5 (at 9:28 a.m.), minimal progress: dilated to 3.5 cm; 50% effaced; minus 1 station. By the following morning (November 6 at 4:03 a.m.) only minimal progress: dilated to 4 cm; 80% effaced; minus 1 station. The resistant progress demonstrated she was not in active labor---a fact that should have been recognized by and known to Dr. Singh.

21. The induction continued in spite of the strikingly obstinate progress. The decision to perform a C-section was repeatedly delayed and was not ultimately undertaken until the late morning of November 6, 2017: delivery occurred and E.J.G. was born at 11:00 a.m. Intervention, then, was not undertaken for more than 86 hours from the time Ms. Henderson was admitted with contractions on November 2 and for more than 68 hours from the time induction had commenced on November 3.

22. The failure to intervene sooner and perform a C-section was unconscionable negligence that unreasonably and unnecessarily subjected Ms. Henderson to unbearable pain and caused Ms. Henderson to sustain permanent injury. Following delivery, Ms. Henderson was in such pain that she wanted to die but knew she could not because she had just given birth to her daughter. Ms. Henderson was diagnosed with an infarction of the central thoracic spinal cord. She has been in intractable and constant pain since that time, a condition that continues in spite of her persistent efforts to obtain ameliorating medical treatment.

23. The negligent misconduct included but was not limited to the following:

a.      Dr. Singh was negligent in the care and treatment he provided to Ms. Henderson and such negligence fell below the applicable standard of care, and breached the duties of care he owed to Ms. Henderson. He negligently failed to comply with the standard of care required of physicians under similar circumstances practicing in the same field or specialty

as such standard of care existed at the time and place of the treatment provided to Ms. Henderson.

b.      Dr. Singh negligently failed to properly assess the prospects of a safe vaginal delivery.

c.      Dr. Singh negligently delayed the abandonment of the induction plan and negligently delayed intervening with a C-Section.

d.      The induction was occasioned by the repeated and negligent administration of Cytotec which itself caused massive hyperstimulation of Ms. Henderson's contractions and massive hypertonus. Yet in the face of those conditions, Dr. Singh negligently administered---and negligently permitted---an unreasonable regimen of Pitocin, compounding the hyperstimulation and hypertonus.

e.      The pain was unreasonably severe. Rather than recognizing that the plan of care was futile, negligent, and damaging, and then abandoning the plan, Dr. Singh negligently permitted the administration of repeated epidurals, anesthesia, and other pain medications---all of which served to prolong the induction, magnify the futility, and intensify the injury and damage.

f.      The indications on the fetal heart monitor tracings also demanded intervention. Throughout this period, the tracings were concerning for the condition of E.J.G., including decelerations, tachycardia, and prolonged decelerations. Dr. Singh negligently failed to intervene to protect and safeguard E.J.G.'s health and well-being---an intervention that would have protected and safeguarded the well-being of Ms. Henderson.

g.      Ms. Henderson's progress was so slow that she did not meet the criteria for being in labor almost from the outset---yet the plan was not abandoned. As the hours wore on,

the vaginal examinations should have informed Dr. Singh that Ms. Henderson was still not in labor, but he continued to permit the punishing administration of Cytotec---and then permitted an irresponsible and negligent regimen of Pitocin which only enhanced the devastating consequences of hyperstimulation and hypertonus. Dr. Singh negligently failed to intervene to protect and safeguard Ms. Henderson's health and well-being.

h. Dr. Singh had Ms. Henderson's medical chart available to him; he owed duties of care to Ms. Henderson; he knew or should have known of the futility, negligence, and danger of the plan; yet he took no action under circumstances that demanded action.

24. Kylie K. Henderson has been injured and has suffered severe and permanent damages for which Dr. Singh was a proximate and contributing cause by failing to provide appropriate and safe medical care during his treatment of Ms. Henderson. The negligent misconduct of Dr. Singh fell below the applicable standards of care and breached the duties of care he owed to Ms. Henderson.

25. Ms. Henderson is permanently and severely injured as a consequence of the negligent acts and omissions of Dr. Singh.

## IV. CLAIM FOR RELIEF: NEGLIGENCE OF DR. SINGH AND LIABILITY OF THE UNITED STATES OF AMERICA

26. Plaintiff hereby incorporates by reference all statements and allegations contained in paragraphs 1 through 25 herein.

27. Dr. Singh owed duties of reasonable care to Ms. Henderson.

28. Dr. Singh negligently breached his duties and negligently failed to comply with the standard of care required of physicians under similar circumstances practicing in the same field or specialty as such standard of care existed at the time and place of the treatment provided to Ms. Henderson.

29. The United States of America is liable for the acts and omissions of Dr. Singh and for the damages proximately caused thereby.

30. As a proximate and direct result of the negligent acts and omissions of Dr. Singh, Ms. Henderson is permanently injured and has suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

## VI. DAMAGES

31. Plaintiff hereby incorporates by reference all statements and allegations contained in paragraphs 1 through 30 herein.

32. As a direct and proximate result of the negligent acts and omissions of Dr. Singh as alleged herein, Ms. Henderson was injured and has incurred damages, including the following:

      a.      Past and future medical and health care expenses in an amount to be proven at trial.

      b.      Past and future physical pain and suffering in an amount to be proven at trial.

      c.      Past and future emotional pain and suffering in an amount to be proven at trial.

      d.      Past and future permanent disability in an amount to be proven at trial.

      e.      Past and future loss of enjoyment of life in an amount to be proven at trial.

      f.      General damages in an amount to be proven at trial.

      g.      Special damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Kylie K. Henderson prays that the Court enter judgment against the United States of America in an amount as supported by the allegations of this Complaint, together with interest and costs thereon, and for such other and further relief as the Court deems just and equitable.

Dated: June 25, 2020.

KYLIE K. HENDERSON
Plaintiff

By: _____

Robert P. Schuster
Bradley L. Booke
Robert P. Schuster, P.C.
250 Veronica Lane, Suite 204
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
bob@bobschuster.com
brad@bobschuster.com

Dallas J. Laird
Wyoming Bar No. 5-1194
536 South Center Street
Casper, Wyoming 82601
Telephone: 1.307.265.6352
dallaslaird@mac.com
*Attorneys for Plaintiff*